UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | x | |
| | : | Case No. 3:11-bk- 08348 -[JAF] |
| Trailer Bridge, Inc.,[1] | : | |
| | : | Chapter 11 |
| Debtor. | : | |
| | : | |
| _____ / | x | |

**DEBTOR'S MOTION FOR ORDER
PURSUANT TO BANKRUPTCY CODE SECTIONS
105(a), AND 363, FED. R. BANKR. P. 6003 AUTHORIZING
(I) MAINTENANCE OF EXISTING BANK ACCOUNTS, (II) USE OF
EXISTING BUSINESS  FORMS, AND (III) USE OF EXISTING CASH
MANAGEMENT SYSTEM AND REQUEST FOR EMERGENCY HEARING**

Trailer Bridge, Inc., a debtor and debtor in possession in the above-captioned case

(the "Debtor") hereby moves this Court (the "Motion") for entry of an order, pursuant to

sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"),

Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

(i) authorizing, but not directing, the Debtor to continue to (a) maintain existing bank

accounts, (b) use existing business forms, and (c) use its existing cash management

system and (ii) granting a waiver of certain operating guidelines relating to bank

accounts.  In addition, the Debtor  and requests an emergency hearing on the Motion.  In

support of the Motion, the Debtor relies upon and incorporates by reference the Chapter

11 Case Summary (the "Case Summary").[2]  In further support of the Motion, the Debtor

---

[1]       The Debtor's taxpayer identification number is 13-3617986.  The mailing address for the Debtor,
solely for purposes of notices and communications is 10405 New Berlin Road East, Jacksonville, Florida
32226.
[2]       Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them
in the Case Summary.

1

respectfully represents:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), and 363, Bankruptcy Rule 6003 and subsection C.5 of the Administrative Order Establishing Initial Procedures in Chapter 11 Cases for the United States Bankruptcy Court for the Middle District of Florida (the "Administrative Order").

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of this bankruptcy case, is set forth in detail in the Case Summary.

4.      The Debtor continues to manage and operate its business as a debtor in possession under Bankruptcy Code sections 1107 and 1108.

5.      No trustee or examiner has been appointed in this chapter 11 case, and no committee has yet been appointed.

## RELIEF REQUESTED

6.     By this Motion, the Debtor seeks entry of an order, pursuant to Bankruptcy Code sections 105(a) and 363 (i) authorizing, but not directing, the Debtor to continue to (a) maintain existing bank accounts, (b) use existing business forms, and (c) use its existing cash management system and (ii) granting a waiver of certain operating guidelines relating to bank accounts set forth in the U.S. Department of Justice, Office of the United States Trustee:  Guidelines for Debtors-in-Possession (the "U.S. Trustee Guidelines") as adopted by the Office of the United States Trustee for the Middle District of Florida (the "U.S. Trustee").

## BASIS FOR RELIEF

### B.     The Debtor Should Be Granted Authority To Maintain Its Existing Bank Accounts.

7.     The U.S. Trustee has established the U.S. Trustee Guidelines for debtors in possession in order to supervise the administration of chapter 11 cases.  The U.S. Trustee Guidelines require chapter 11 debtors to, among other obligations, (a) close all existing bank accounts and open new debtor in possession bank accounts for which the signature cards shall indicate that the debtor is a "Chapter 11 Debtor in possession"; (b) establish a new payroll account; and (c) maintain any funds in excess of the amount required for current operations in an interest-bearing account.  These requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations and prevent the inadvertent postpetition payment of prepetition claims.  Pursuant to Bankruptcy Code sections 105(a) and 363 and the

Administrative Order, the Debtor seeks a waiver of these requirements and authorization to continue using its existing bank accounts.

**(1)      Prepetition and Postpetition Revolving Credit Facilities**

8.      Prepetition the Debtor entered into a revolving credit facility with Wells Fargo Bank, N.A. ("<u>Wells</u>"), as amended, which provides for a maximum availability of $10 million and expires April 2012 (the "<u>Wells Revolving Credit Facility</u>").  The Wells Revolving Credit Facility is subject to a borrowing base formula based on a percentage of eligible accounts receivable and is secured by a first lien on the Debtor's accounts receivable and certain of the Debtor's equipment.

9.      The Wells Revolving Credit Facility is the center of all cash inflows and outflows for the Debtor.  All incoming cash is deposited directly into a lockbox account controlled by Wells (the "<u>Control Account</u>").  To satisfy its expected outgoing cash needs, the Debtor submits a draw request to Wells, based on the amount invoiced by the Debtor for the previous week to provide for its outgoing cash needs.

10.      The Debtor anticipates entering into a postpetition financing agreement (the "<u>DIP Financing Agreement</u>"), by and among, the Debtor, certain financial institutions and Law Debenture Trust Company of New York, as agent, under which the Debtor will be provided with a term credit facility in an amount not to exceed $15 million (the "<u>DIP Credit Facility</u>").  The Debtor has filed a motion contemporaneously herewith to approve the DIP Financing Agreement (the "<u>DIP Motion</u>").  Upon entry of an order approving the DIP Motion, the DIP Credit Facility will replace the Wells Revolving Credit Facility as the centerpiece of the Debtor's cash management system.

### (2)  Bank Accounts

11.     Prior to the commencement of this chapter 11 case, in the ordinary course of its business, the Debtor maintained five (5) bank accounts out of which it manages cash receipts and disbursements (the "Bank Accounts").  A list of the Bank Accounts is attached hereto as Exhibit A.

12.     The Control Account.  The Debtor's incoming cash system is centralized around the Control Account at Wells.  All incoming wires, ACHs, checks and cash collected by the Debtor are deposited into the Control Account.  Any amounts in this account are swept nightly by Wells to pay down the balance on the Wells Revolving Credit Facility.

13.     Disbursement Bank Account.  The Debtor's outgoing cash is disbursed through one (1) operating account (the "Operating Account").  Amounts requested by the Debtor under the Wells Revolver Credit Facility are transferred into the Operating Account and fund all accounts payable checks, ACHs, and wires as needed.

14.     DIP Account.  As a requirement under the DIP Financing Agreement, the Debtor may open a debtor in possession account with Wells into which it will deposit all amounts drawn under the DIP Facility.

15.     The Debtor seeks a waiver of the U.S. Trustee's requirement that the prepetition Bank Accounts be closed and that new postpetition bank accounts be opened. If enforced in this case, such a requirement would cause enormous disruption in the Debtor's business and would impair the Debtor's efforts to reorganize and pursue other alternatives to maximize the value of its estate.  Indeed, as explained in more detail

below, the Bank Accounts comprise an established cash management system that the Debtor needs to maintain in order to ensure smooth collections and disbursements in the ordinary course.

16.     Accordingly, in order to avoid delays in payments to administrative creditors, to ensure as smooth a transition into chapter 11 as possible with minimal disruption, and to aid in the Debtor's efforts to complete this case successfully and rapidly, the Debtor must be permitted to continue to maintain its existing Bank Accounts and, if necessary, open new and close existing accounts, wherever needed, whether or not such banks are designated depositories in the Middle District of Florida.

17.     Courts have regularly entered orders authorizing debtors to maintain their prepetition bank accounts.  See, e.g., In re RQB Resort, LP, Case No. 10-01596 (PMG) (Bankr. M.D. Fla. Mar. 4, 2010); In re a21, Inc., Case No. 08-07610 (PMG) (M.D. Fla. Dec. 12, 2008); In re Emivest Aerospace Corporation, Case No. 10-13391 (MFW) (Bankr. D. Del. Oct. 25, 2010).

18.     In sum, subject to a prohibition against honoring prepetition checks without specific authorization from this Court, the Debtor requests that the Bank Accounts be deemed to be debtor in possession accounts and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as those employed during the prepetition period, be authorized.

19.     The Debtor represents that if the relief requested in this Motion is granted, it will not pay, and each of the banks at which the Bank Accounts are maintained will be

directed not to pay, any debts incurred before the Petition Date, other than as authorized by this Court.

**C.     The Debtor Should Be Granted Authority To Continue To Use Existing Business Forms And Checks.**

20.     In order to minimize expenses to its estate, the Debtor also seeks authorization to continue using all correspondence, business forms (including, without limitation, letterhead, purchase orders, and invoices), and checks existing immediately prior to the Petition Date, without reference to the Debtor's status as a debtor in possession.

21.     Most parties doing business with the Debtor undoubtedly will be aware of the Debtor's status as a debtor in possession as a result the press releases issued by the Debtor and additional other press coverage.  Moreover, each of the Debtor's vendors will receive direct notice of the commencement of this case.

22.     Changing correspondence and business forms would be expensive, unnecessary, and burdensome to the Debtor's estate and disruptive to the Debtor's business operations and would not confer any benefit upon those dealing with the Debtor. For these reasons, the Debtor requests that it be authorized to use existing checks and business forms without being required to place the label "Debtor in possession" on each.

23.     Courts in this district have consistently allowed debtors to use their prepetition business forms without the "debtor in possession" label.  See, e.g., In re RQB Resort, LP, Case No. 10-01596 (PMG) (Bankr. M.D. Fla. Mar. 4, 2010); In re a21, Inc., Case No. 08-07610 (PMG) (M.D. Fla. Dec. 12, 2008); In re Emivest Aerospace

Corporation, Case No. 10-13391 (MFW) (Bankr. D. Del. Oct. 25, 2010).  The Debtor respectfully submits that such relief should be granted here.

**D.    The Debtor Should Be Authorized To Continue To Use The Existing Cash Management System.**

24.    The cash management procedures utilized by the Debtor constitute ordinary, usual, and essential business practices and are similar to those used by other major freight transportation companies.  The cash management system facilitates cash forecasting and reporting, monitors collection and disbursement of funds, reduces administrative expenses by facilitating the movement of funds and the development of more timely and accurate balance and presentment information, and administers the various bank accounts required to effect the collection, disbursement, and movement of cash.

**(1)    The Cash Management System - Sales and Receipts**

25.    <u>Sales and Receipts</u>.  The Debtor's cash management system is funded primarily by receipts received from its customers for the purchase of shipping and intermodal transportation services.  Upon receipt of cash and check proceeds, such proceeds are all deposited directly into the Control Account.  Sale proceeds generated through credit and debit card transactions are processed by a merchant card processing servicer and are deposited into the Control Account within 48 hours.  Each night, the funds in the Control Account are swept by Wells to pay down amounts outstanding under the Wells Revolving Credit Facility.  Upon entry of an order approving the DIP Motion, the funds swept by Wells will no longer be applied to pay down the amounts outstanding under the Wells Revolving Credit Facility.

**(2)    The Debtor's Cash Management System -Disbursements.**

26.    Operating Accounts.  The Debtor maintains one (1) Operating Account at Wells.  The Operating Account is utilized to fund disbursements, whether directly or indirectly via various disbursement subaccounts.  The Operating Account is directly funded by Wells after Wells receives from the Debtor a borrowing request against the Wells Revolving Credit Facility for the amount necessary to fund obligations.  It is through this account that the Debtor makes the majority of its payments to vendors and other creditors.  Upon approval of the DIP Motion, borrowing requests by the Debtor will be made against the DIP Credit Facility.

27.    Payroll Account.  The Operating Account also funds the Debtor's payroll account held at Wells (the "Payroll Account").  Transfers are made between the Operating and Payroll Accounts to ensure that a balance of $1,000.00 is maintained in the Payroll Account at all times.  Funds held in the Payroll Account are sent to an account maintained with Automatic Data Processing, Inc. (the "ADP"), which oversees the payment of payroll to the Debtor's employees.

28.    Petty Cash Account.  The Debtor also maintains a petty cash account with Banco Popular in San Juan, Puerto Rico (the "Petty Cash Account").  The Debtor maintains a balance of approximately $5,000 in the Petty Cash Account and funds in this account are used for various administrative expenses.

**(3)    The Debtor's cash management system is maintained in the ordinary course of business and is beneficial to the Debtor and its estate.**

29.    The Debtor's cash management system is highly automated and computerized.  This allows the Debtor to manage centrally all of its cash flow needs and

includes the necessary accounting controls to enable the Debtor, as well as creditors and the Court, to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable. The Debtor will continue to maintain detailed records reflecting all transfers of funds.

30.     The cash management procedures that the Debtor uses constitute ordinary, usual, and essential business practices and are similar to those used by other major corporate enterprises. The cash management system benefits the Debtor in significant ways, including the ability to (i) control corporate funds centrally, (ii) ensure availability of funds when necessary, and (iii) reduce administrative expenses by facilitating the movement of funds and the development of more timely and accurate balance and presentment information.

31.     In furtherance of this goal, the Debtor requests that all banks at which the Bank Accounts are maintained (the "Banks") be authorized and directed to continue to administer the Bank Accounts as such accounts were maintained prepetition, without interruption and in the usual and ordinary course, and to pay any and all checks, drafts, wires, or electronic funds transfers presented, issued, or drawn on the Bank Accounts on account of a claim arising on or after the Petition Date so long as sufficient funds are in said Bank Accounts.

32.     The Debtor further requests that the Banks be restrained from honoring any check, draft, wire, or electronic funds transfer presented, issued, or drawn on the Bank Accounts on account of a prepetition claim unless (i) authorized in an order of this

Court, (ii) not otherwise prohibited by a "stop payment" request received by the Banks from the Debtor, and (iii) supported by sufficient funds in the Bank Account in question.

33.     To effectuate the foregoing, the Debtor requests that the Banks be authorized and directed to honor all representations from the Debtor as to which checks should be honored or dishonored.  To the extent that the Debtor has directed that any prepetition checks be dishonored, it reserves the right to issue replacement checks to pay the amounts related to such dishonored checks consistent with the orders of this Court.

34.     The operation of the Debtor's business requires that the cash management system continue during the pendency of this chapter 11 case.  Requiring the Debtor to adopt a new, segmented cash management system at this early and critical stage of this case would be expensive, would create unnecessary administrative problems, and would likely be much more disruptive than productive.  Any such disruption could have an adverse impact upon the Debtor's ability to reorganize.

35.     Allowing the Debtor to utilize its prepetition cash management system is entirely consistent with applicable provisions of the Bankruptcy Code.

36.     In particular, this Court has the authority to grant the requested relief pursuant to its equitable powers under section 105(a) of the Bankruptcy Code. Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

37.     Indeed, bankruptcy courts routinely permit chapter 11 debtors to continue using their existing cash management system, generally treating requests for such relief

as a relatively "simple matter."  In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see also In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992) (recognizing that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash"), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993), cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp., 510 U.S. 1110 (1994).

38.    Courts have granted substantially similar relief in other chapter 11 cases. See, e.g., In re Emivest Aerospace Corporation, Case No. 10-13391 (MFW) (Bankr. D. Del. Oct. 25, 2010); In re RQB Resort, LP, Case No. 10-01596 (PMG) (Bankr. M.D. Fla. Mar. 4, 2010); In re a21, Inc., Case No. 08-07610 (PMG) (M.D. Fla. Dec. 12, 2008).  The Debtor respectfully submits that such relief should be granted here.

**E.     The Debtor Will Incur Immediate and Irreparable Harm If It Is Not Permitted To Continue To Use Its Cash Management System.**

39.    The relief requested is also warranted under Bankruptcy Rule 6003, which provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following:  . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

Fed. R. Bankr. P. 6003; see In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on interim basis to avoid irreparable harm).  The Debtor submits that for the

reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm such as exposure to litigation and the risk of expensive audits.

40.     To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtor submits that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

41.     Accordingly, the Court should allow the for the continued use of the Debtor's cash management system.

### WAIVER OF BANKRUPTCY RULE 6004(h)

42.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). To successfully implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h).

### NOTICE

43.     Notice of this Motion shall be given to (i) the Office of the United States Trustee for the Middle District of Florida; (ii) the Internal Revenue Service; (iii) Cadwalader, Wickersham & Taft LLP, 700 Sixth Street, N.W., Washington, DC 20001, Attn: Doug Mintz and Berger Singerman, 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Attn: Jordi Guso, counsel to the agent for the Debtor's

proposed postpetition lender; (iii) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, NY 10169, Attn: Jonathan N. Helfat and Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, FL 32202, Attn: Stephen D. Busey, counsel to Wells Fargo Bank, N.A., as agent to the Debtor's prepetition lender; (iv) Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for United States Department of Transportation Maritime Administration, 1201 Pennsylvania Ave NW # 300, Washington, DC 20004, Attn: Mary A. Schmergel; (iv) Seward Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Gregg S. Bateman, counsel to Deutsche Bank Trust Company Americas, as successor Indenture Trustee of Senior Bonds; (v) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005, Attn: Dennis F. Dunne, counsel to Seacor Holdings, Inc.; (vi) U.S. Bank N.A., Corporate Trust Services, One Federal Street, 3rd Floor, Boston, MA 02110, Attn: Earl W. Dennison Jr., as Indenture Trustee to the outstanding MARAD Bonds (the "MARAD Bond Indenture Trustee"); (vii) Shipman and Goodman, LLP, One Constitution Plaza, Hartford, Connecticut, 06103, Attn: Leslie Davenport, counsel to the MARAD Bond Indenture Trustee; and (viii) the Debtor's top twenty (20) largest unsecured creditors. The Debtor submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

44. No previous request for the relief sought in this Motion has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in form attached as Exhibit B, granting the relief requested in the Motion and such further relief as may be just and proper.

Dated:  November 16, 2011
      Jacksonville, Florida

FOLEY & LARDNER LLP
/s/ Gardner F. Davis
Gardner F. Davis (FL 0471712)
E. Robert Meek (FL 0302910)
John J. Wolfel, Jr. (FL 030664)
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
P. O. Box 240
Jacksonville, FL 32201-0240
Telephone:  (904) 359-2000
Facsimile:  (904) 359-8700
Email:  gdavis@foley.com
      rmeek@foley.com
      jwolfel@foley.com

-and-

DLA PIPER LLP (US)

Gregg M. Galardi (NY 4535506)
Gabriella Zborovsky (NY  4851614)
Sarah E. Castle (NY 4932240)
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
Email:  gregg.galardi@dlapiper.com
      gabriella.zborovsky@dlapiper.com
      sarah.castle@dlapiper.com

-and-

Craig Martin (DE 5032)
Cynthia E. Moh (DE 5041)
919 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 468-5700
Facsimile:  (302) 394-2341
Email:  craig.martin@dlapiper.com
      cynthia.moh@dlapiper.com

*Proposed Co-Counsel for the Debtor and
Debtor in Possession*

## EXHIBIT A

## (LIST OF BANK ACCOUNTS)

| Account Reference | Bank Name | Account Number | Account Balance as of 11/9/11 | Description | Location |
|---|---|---|---|---|---|
| 1 | Wells Fargo Capital Finance | xxxxxxxxx-5571 | 0.00 | Control | Fort Lauderdale, Florida |
| 2 | Wells Fargo Capital Finance | xxxxxxxxx-2093 | 1,213,789.54 | Operating | Fort Lauderdale, Florida |
| 3 | Wells Fargo Capital Finance | xxxxxxxxx-7420 | 1,000,000.00 | Payroll | Fort Lauderdale, Florida |
| 4 | Wells Fargo Capital Finance | xxxxxxx-2500 | 0.00 | Sweep[1] | Fort Lauderdale, Florida |
| 5 | Banco Popular | xxx-xx1559 | 5,000.00 | Petty Cash | San Juan, Puerto Rico |

---

[1] The Sweep Account at Wells is currently inactive and has a zero balance.

**<u>EXHIBIT B</u>**

**(FORM OF PROPOSED ORDER)**

**FOR NOTICE PURPOSES ONLY, PROPOSED ORDER TO BE SUBMITTED IN ACCORDANCE WITH LOCAL RULE 9072-1(C) WITHIN THREE DAYS AFTER THE HEARING.**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                          x
                                                :
Trailer Bridge, Inc.,[1]                        :     Case No. 3:11-bk-_08348_-[JAF]
                                                :
            Debtor.                             :     Chapter 11
                                                :
                                                :
_____/               x

**ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105(a) AND 363, FED. R. BANKR. P. 6003
AUTHORIZING (I) MAINTENANCE OF EXISTING BANK
ACCOUNTS, (II) USE OF EXISTING BUSINESS FORMS, AND
(III) USE OF EXISTING CASH MANAGEMENT SYSTEM**

THIS CASE came before the Court upon the emergency motion (the "<u>Motion</u>")[2] of the Debtor for an order, pursuant to Bankruptcy Code sections 105(a) and 363, and Bankruptcy Rule 6003 (i) authorizing, but not directing, the Debtor to continue to (a) maintain existing bank accounts, (b) use existing business forms, (c) use its existing cash management system and (ii) granting a waiver of certain operating guidelines relating to bank accounts. An emergency hearing was held on this Motion on November [___], 2011, and upon the evidence presented, it is

**ORDERED:**

1.     The Motion is GRANTED as set forth herein.

---

[1]     The Debtor's taxpayer identification number is 13-3617986. The mailing address for the Debtor, solely for purposes of notices and communications is 10405 New Berlin Road East, Jacksonville, Florida 32226.

[2]     Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

**A.     Maintenance of Bank Accounts.**

2.     Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtor is authorized and directed to (i) designate, maintain, and continue to use any and all of its respective depository, concentration, disbursement, operating, and other accounts (collectively, the "Prepetition Bank Accounts") in existence as of the Petition Date, with the same account numbers, including the accounts identified in Exhibit 1 annexed hereto; (ii) if necessary, open new accounts wherever they are needed, whether or not such banks are designated depositories in the Middle District of Florida (such new accounts, together with the Prepetition Bank Accounts, hereinafter the "Bank Accounts"); and (iii) treat the Bank Accounts for all purposes as accounts of the Debtor in its capacity as a debtor in possession; provided, however, that the Debtor may only open new Bank Accounts with Banks that agree to be bound by the terms of this Order and, in particular, the Debtor's cash management system.  The Debtor is further authorized to close Bank Accounts in the ordinary course of business.

**B.     Use of Business Forms.**

3.     The Debtor is authorized to continue to use its existing business forms and checks without alteration or change and without the designation "Debtor in possession" or a "debtor in possession case number" imprinted upon them.  To the extent the Debtor opens or closes bank accounts, it shall provide notice to the United States Trustee and any statutory committee appointed in this case.  Any new check stock used by the Debtor shall contain the designation "Debtor in possession".

**C.      Cash Management System.**

4.      The Debtor is authorized to continue to use its existing cash management system and shall maintain through the use thereof detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Debtor's cash management system, except as modified by this Order.  In connection with the ongoing utilization of their cash management system, the Debtor shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

5.      Those certain existing deposit agreements between the Debtor and its existing depository and disbursement banks (collectively, the "Banks") shall continue to govern the postpetition cash management relationship between the Debtor and the Banks, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

6.      The Debtor and the Banks may, without further Order of this Court, agree to and implement changes to the cash management systems and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts.

7.      Each of the Debtor's Banks is authorized to debit the Debtor's accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Commencement Date; (ii) all checks or other items deposited in one of Debtor's accounts with such Bank prior

to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

8.    Any of the Debtor's Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein.

9.    After the Petition Date, and subject to the terms of this Order, all Banks at which the Bank Accounts are maintained are authorized and directed to continue to administer the Bank Accounts as such accounts were maintained prepetition, without interruption and in the usual and ordinary course, and to pay any and all checks, wire transfers, electronic funds transfers, or other items presented, issued, or drawn on the Bank Accounts; provided, further, that the Bank Accounts shall be administered in accordance with the Debtor's obligations under debtor in possession financing facility (the "DIP Credit Facility"); provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers (excluding any electronic funds transfer that the banks are obligated to settle), or other items presented, issued, or drawn on the Bank Accounts prior to the Petition Date shall be honored.

10.     Subject to the provisions of this Order, the Banks are authorized and directed to honor all representations from the Debtor as to which checks should be honored or dishonored.

11.     The Debtor is hereby authorized to execute any additional documents incident to the relief granted pursuant to this Order.

12.     To the extent applicable, the Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

13.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

14.     This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

**DONE** and **ORDERED** in Chambers at Jacksonville, Florida, on _____.

_____
United States Bankruptcy Judge

Copies to:

<u>EXHIBIT 1</u>

(LIST OF BANK ACCOUNTS)